Aniela K. Szymanski, Esq.
Nevada Bar No. 15822
3765 E. Sunset Rd. B9
Las Vegas NV 89120
702-899-8180
Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| BERJ YENOVKIAN, AN INDIVIDUAL; SONIA YENOVKIAN, AN INDIVIDUAL<br><br>Plaintiff,<br><br>vs.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT, a municipal entity; OFFICER RONNIE POTTS JR; OFFICER MITCHELL LEGROW, OFFICER NICHOLAS PARR, OFFICER DANIEL AGUILAR; SERGEANT TULLIO PANDULLO; DOES 1 THROUGH 100,<br><br>Defendants. | Case No.:<br><br>COMPLAINT FOR:<br><br>1. 42 U.S.C. § 1983 – FOURTH AMENDMENT VIOLATIONS (Unconstitutional Search)<br><br>2. 42 U.S.C. § 1983 – FOURTH AMENDMENT VIOLATIONS (Unconstitutional Seizure)<br><br>3. 42 U.S.C. § 1983 – FAILURE TO TRAIN<br><br>4. 42 U.S.C. § 1983 – RATIFICATION<br><br>5. 42 U.S.C. § 1983 – FAILURE TO INTERVENE<br><br>6. 42 U.S.C. § 1983 – DELIBERATE FABRICATION OF EVIDENCE<br><br>7. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS<br><br>8. ELDER ABUSE<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1. Plaintiffs BERJ YENOVKIAN and SONIA YENOVKIAN ("YENOVKIANS"), are husband and wife, and parents of VEM MILLER.

1

2. On October 12, 2024, Vem Miller was falsely accused of attempting to assassinate President Donald Trump in California.

3. Twenty-four (24) hours after the false allegation, and after Vem Miller was cleared of being an "assassin," police officers from Las Vegas Metropolitan Police Department ("**LVMPD**") went to Plaintiffs' home twice, on two consecutive days, and harassed Plaintiffs.

4. LVMPD officers claimed they were doing a "welfare check," but no one could be located who actually had called LVMPD concerned about the Plaintiffs.

5. Both the actions of the officers and the official records instead demonstrated that LVMPD was using the "welfare check" as a ruse to attempt to illegally gain access to Plaintiffs' residence seeking Vem Miller.

6. In the process, Plaintiffs were held hostage in their own home, unable to leave, and petrified from fear as LVMPD officers stood outside their home.

## PARTIES

7. Plaintiff BERJ YENOVKIAN is and at all times relevant to this Complaint an individual residing in the County of Clark, State of Nevada.

8. Plaintiff SONIA YENOVKIAN is and at all times relevant to this Complaint an individual residing in the County of Clark, State of Nevada.

9. LAS VEGAS METROPOLITAN POLICE DEPARTMENT ("LVMPD") is a government agency which employs and trains police officers.

10. Officer Ronnie Potts Jr. was employed by LVMPD as a police officer at all times relevant herein.

11. Officer Mitchell Legrow, was employed by LVMPD as a police officer at all times relevant herein.

12. Officer Nicholas Parr, was employed by LVMPD as a police officer at all times relevant herein.

13. Officer Daniel Aguilar was employed by LVMPD as a police officer at all times relevant herein.

14. The true names or capacities, whether individual, corporate, associate, or otherwise of the Defendants named herein as Does 1-100 are presently unknown to Plaintiffs, who therefore sue said Defendants by such fictitious names. Plaintiff prays for leave to amend this Complaint to show the true names or capacities of these Defendants if and when the same have been determined.

## JURISDICTION AND VENUE

15. This action arises under Title 42 of the United States Code Sections 1983 and 1988. Jurisdiction is proper in this Court as conferred by Title 28 of the United States Code Section 1331.

16. The jurisdiction of this court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(a)(4), and 29 U.S.C. § 794(a).

17. Venue is proper in this United States District Court for the District of Nevada pursuant to 28 U.S.C. § 1391 in that Nevada is where a substantial part of the events or omissions give rise to all the actions complained of herein took place.

## FACTUAL ALLEGATIONS

18. Plaintiffs are retired professionals, both over the age of 75.

19. Plaintiffs are the parents of Vem Miller.

20. Vem Miller did not reside with Plaintiffs.

21. Vem Miller was falsely accused of being an "assassin" of President Donald Trump in California.

22. October 14, 2024, Defendant SERGEANT TULLIO PANDULLO of the LVMPD Counter Terrorism Center, came to Plaintiffs' residence, aggressively knocking on the door.

23. Based on information and belief, Sergeant Pandullo's visit had nothing to do with checking on the welfare of Plaintiffs and was actually an attempt to locate their son, Vem Miller.

24. Plaintiffs were frightened by this unexpected, unannounced, unwarranted visit and hid in their house, not answering the door because of their fear.

25. Based on information and belief, on October 14, 2024, Sergeant Pandullo and other Defendants questioned Plaintiffs' neighbors about Vem Miller and Plaintiffs' whereabouts.

26. On October 13, 2024, Defendant Sergeant Pandullo left a business card at Plaintiffs' residence.

27. Sergeant Pandullo was identified on his business card as a member of the "Southern Nevada Counter Terrorism Center."

28. Based on information and belief, the LVMPD Counter Terrorism Center is not responsible for routine "welfare checks."

29. Plaintiffs were frightened by the fact that their home was being visited by someone from a Counter Terrorism Center.

30. On October 14, 2024, LVMPD officers went to Plaintiffs' residence again.

31. On both October 13 and 14, 2024, Defendants questioned neighbors about Vem Miller and Plaintiffs' whereabouts again.

32. Each time Officers questioned Plaintiffs' neighbors, they asked whether they were the ones to call LVMPD to check on Plaintiffs and all the neighbors denied calling LVMPD. Each time Defendant officers told neighbors that "a neighbor" had called LVMPD.

33. Each neighbor Defendants spoke to described Plaintiffs as being old, or frail, or both old and frail.

34. One neighbor stated she had seen Plaintiffs just days prior checking their mail.

35. Based on information and belief, Defendants were aware of Plaintiffs 'elderly and vulnerable state.

36. The October 14, 2024, LVMPD Communication Center report stated police were called by the property manager, Rashell Frei.

37. Based on information and belief, Rashell Frei did NOT call LVMPD.

38. John Doe 5 can be heard on body camera video making a call to an unknown party asking who the original person reporting ("PR") was for the complaint stating, "It's kind of like fourth hand information, I'm kind of confused, I'm trying to call the PR and they're not answering."

39. Based on information and belief, LVMPD was attempting to get neighbors to admit to calling LVMPD as a cover story for their real intention of visiting Plaintiffs' home.

40. Based on information and belief, the real reason for LVMPD officers 'visit to Plaintiffs ' home was a search for their son Vem Miller.

41. John Doe 1 can be heard on the body camera footage stating "What's weird is…do the son and them get along because they [Plaintiffs] have a Trump sign. . . I'm confused."

42. Officer Nicholas Parr ("Parr") states: "We can go sniff the door man." Based on information and belief this was a statement of intent to illegally search the Plaintiffs 'home.

43. John Doe 3 states: "I think they're fine."

44. Officer Parr states: "I think so too, but at the end of the day . . .I don't think . . . it's kind of hard to say we have enough."

45. John Doe 1 states: "We don't have enough to get in."

46. Based on information and belief, Officers intended to conduct a search, not a welfare check, and knew they did not have legal authority to do so.

47. Officer Parr called the owner of house ("Jeremy") who stated he did NOT call the police.

48. Officer Parr asked Landlord to come open the front door of the house before even approaching the house. This demonstrated an intent to access the house and NOT conduct a "welfare check."

49. Rang doorbell – knocked. Plaintiffs did not answer. Officer Parr, referring to the Landlord, stated: "I think if he lets us in, I think we're covered." Again, Defendants were exhibiting a clear intent to enter the house one way or another.

50. Officer Parr then called for an additional unit.

51. Based on information and belief, there were already three units at Plaintiffs' property and no need for additional law enforcement authority.

52. Based on information and belief, this action was intentionally taken to intimidate Plaintiffs into believing they had no freedom to leave their home.

53. Plaintiffs did, in fact, feel that they could not leave their home.

54. Plaintiffs felt that they could not even open their front door for fear that officers would barge into their private residence forcefully.

55. Officer Parr and Does 1 thorough 2 walked onto Plaintiffs' private property and examined their back yard while waiting for the property owner to arrive.

56. Does 4 and 5 noted and discussed the fact that a clothes dryer sounded like it was running inside the home and that clothes dryers only run for approximately 90 minutes, indicating "so someone's just here, he's here, or they just left."

57. Doe 2 again stated "I don't think we have enough to go in."

58. Does 1 and 2 went to the windows of Plaintiffs' home and flashed flashlights through them.

59. Officers looked into the windows of Plaintiffs' cars that were parked in their driveway.

60. Plaintiffs had a reasonable expectation of privacy over the contents of their locked cars in their driveway on personal property.

61. Officers looked into Plaintiffs' backyard, where Plaintiffs also had a reasonable expectation of privacy.

62. Doe 3 stated "What did LT say?" Based on information and belief, this is a question about what LVMPD supervisors, named as Does in this complaint, instructed the officers on scene to do.

63. Doe 2 stated "He approves of my assumptions, we're going in!"

64. Plaintiffs were inside their home during this time frightened and panicking.

65. LVMPD's actions subjected Mr. YENOVKIAN to such stress that he suffered a medical emergency that his wife, a former nurse, had to help him resolve.

66. Plaintiffs called a friend of Plaintiffs' family, Steve Sanson ("Sanson"), because they were so scared and they did not know what to do.

67. Sanson arrived at the scene, informed officers that the Plaintiffs were fine, and that they were elderly, but Defendants refused to leave. Defendants instead threatened that they would arrest Sanson for interference.

68. Sanson called numerous authorities in an attempt to "call off" the LVMPD officers from continuing their intrusive and unreasonable behavior.

69. Despite Sanson's efforts, Defendants persisted.

70. Defendants called a locksmith to come and forcibly enter the residence.

71. Defendants only departed Plaintiffs 'residence after Plaintiffs were forced to stand in a window so that Defendants could see them.

72. Defendants 'actions caused public humiliation to the Plaintiffs in their double-gated, quiet and close-knit residential community.

73. Days later, Plaintiffs were served a five-day eviction notice by the owner of the house they were renting.

74. Plaintiffs were forced to move from their residence and incurred relocation expenses.

75. Plaintiffs suffered injuries to their person and have been forced to seek medical treatment because of Defendants 'actions.

76. Plaintiffs suffered emotional and mental distress as a result of these incidents.

77. Plaintiffs filed a complaint with LVMPD Internal Affairs on October 17, 2024 about this incident. No action was taken by LVMPD.

78. Sanson filed a complaint with LVMPD on October 17, 2024 about this incident. No action was taken by LVMPD.

79. Based on information and belief, Defendants were using the "welfare check" as a subterfuge while on a search for evidence in an attempt to ex post facto justify prior false comments made Riverside County Sheriff's Department about their son, Vem Miller.

**FIRST CAUSE OF ACTION**
**42 U.S.C. § 1983 – Fourth Amendment Violation**
**Against Defendants LVMPD, Parr; Potts Jr; Legrow; Aguilar, Pandullo, Does 1-100**

8

80. Plaintiffs re-allege as though set forth herein the allegations of paragraph 1 – 79 above.

81. A Fourth Amendment violation occurs when a defendant conducts an unreasonable search and seizure, without probable cause or warrant, and conducted under color of state law.

82. Here, Defendants acted without probable cause or warrant by searching all around Plaintiffs 'residence as well as looking through the windows of their vehicles parked on private property. Defendants even summoned the landlord of the property to come and open the front door, stating that would provide them the legal cover they needed to enter the home without a warrant.

83. Defendants conducted the search intentionally, stating they wanted to enter the property, even going so far as to call a locksmith to involuntarily open the door.

84. The search was unreasonable and Officers stated at least twice that they lacked the legal authority to conduct a search.

## SECOND CAUSE OF ACTION
### 42 U.S.C. § 1983 – Fourth Amendment Violation
### Against Defendants LVMPD, Parr; Potts Jr; Legrow; Aguilar, Pandullo; Does 1-100

85. Plaintiffs re-allege as though set forth herein the allegations of paragraph 1 – 84 above.

86. Defendants were aware that Plaintiffs were inside their home and unharmed.

87. Defendants seized the Plaintiffs by restraining their ability to leave their home.

88. Second, in seizing the Plaintiffs' person, the Defendants acted intentionally and/or with reckless disregard for their Constitutional rights; and

89. Third, the seizure was unreasonable in that it far exceeded a "welfare check."

90. Plaintiffs suffered damages as a direct, foreseeable, and proximate result of the Defendants' unlawful actions.

## THIRD CAUSE OF ACTION
### 42 U.S.C. § 1983 – Failure to Train
### Against LVMPD

91. Plaintiffs re-allege as though set forth herein the allegations of paragraph 1 – 84 above.

92. A municipality is liable for failure to train when it maintains an inadequate training program, deliberate indifference to constitutional rights, and there is a causal link between the inadequate training and constitutional violation.

93. LVMPD failed to adequately train its employee police officers on proper procedures for welfare checks, constitutional limits on searches and protocol for interactions with innocent civilians.

94. LVMPD had inadequate training programs on Constitutional search limitations, conducting welfare checks, and Constitutional seizure limitations.

95. LVMPD demonstrated a deliberate indifference to Constitutional rights through a failure to have proper policies in place regarding Constitutional limits when conducting welfare checks, and failure to implement proper training related to Constitutional rights of civilians.

96. A causal link exists between LVMPD's inadequate training and constitutional violations that occurred here.

97. Defendants suffered damages as a direct, foreseeable, and proximate result of Defendants' unlawful actions.

98. Defendants committed the acts herein with recklessness and/or malice.

99. Plaintiffs suffered damages as a direct, foreseeable, and proximate result of the Defendants 'unlawful actions.

## FOURTH CAUSE OF ACTION
### 42 U.S.C. § 1983 – Ratification
### Against LVMPD

100. Plaintiffs re-allege as though set forth herein the allegations of paragraph 1 – 84 above.

101. To establish municipal liability under 42 U.S.C. § 1983 per *Monell v. Dep't of Soc. Servs*., 436 U.S. 658 (1978), plaintiff must demonstrate that the constitutional violation resulted from: (1) an official policy; (2) a widespread custom or practice; (3) deliberate indifference in failure to train; or (4) ratification by final policymakers.

102. Plaintiffs allege that LVMPD violated their Constitutional rights set forth in the Fourth Amendment of the U.S. Constitution.

103. LVMPD supervisors gave permission to LVMPD officers to engage in, and continue, the actions taken on October 13 and 14, 2024.

104. LVMPD further ratified officers' actions after two complaints were made by Plaintiffs and Sanson and no action was taken by LVMPD.

105. Plaintiffs suffered damages as a direct, foreseeable, and proximate result of the Defendants 'unlawful actions.

**FIFTH CAUSE OF ACTION**
**42 U.S.C. § 1983 – Failure to Intervene**
**Against all Parr; Potts Jr; Legrow; Aguilar, Pandullo, and DOES 1-100**

106. Plaintiffs re-allege as though set forth herein the allegations of paragraph 1 – 84 above.

107. The elements of a Failure to Intervene cause of action are: (1) officer present at scene of constitutional violation, (2) officer had opportunity to intervene, (3) officer failed to intervene; and (4) constitutional violation occurred.

108. Defendants Parr, Potts Jr, Legrow, Aguilar, and Pandullo were all present and/or participated in the deprivation of Plaintiffs 'Fourth Amendment rights as set forth above,

including but not limited to being aware that inadequate cause existed to enter Plaintiffs' home and/or to detain them inside their home.

109. Each officer had the opportunity to intervene and some even stated that inadequate facts existed to proceed further.

110. No officer intervened to stop the violation of Plaintiffs' rights.

111. Plaintiffs' rights were violated in that they were subjected to an unlawful search and unlawful seizure.

112. Plaintiffs suffered damages as a direct, foreseeable, and proximate result of the Defendants' unlawful actions.

**SIXTH CAUSE OF ACTION**
**42 U.S.C. § 1983 – Deliberate Fabrication of Evidence**
**Against all Parr; Potts Jr; Legrow; Aguilar, Pandullo, and DOES 1-100**

113. Plaintiffs re-allege as though set forth herein the allegations of paragraph 1 – 84 above.

114. Defendants, either collectively or individually, deliberately fabricated that Plaintiffs' property manager had called LVMPD seeking a "welfare check" related to Plaintiffs.

115. Defendants, either collectively or individually, deliberately fabricated that they were performing a "welfare check" on Plaintiffs.

116. This false information was used to deprive Plaintiffs of their Fourth Amendment rights.

117. Defendants continued their "welfare check" even though they knew Plaintiffs were not in danger and were deliberately indifferent to Plaintiff's well-being, resulting in the deprivation of Plaintiffs' Fourth Amendment rights.

118. Plaintiffs suffered damages as a direct, foreseeable, and proximate result of the Defendants' unlawful actions.

**SEVENTH CAUSE OF ACTION**
**Intentional Infliction of Emotional Distress**
**Against all Defendants**

119. Plaintiffs re-allege as though set forth herein the allegations of paragraph 1 – 84 above.

120. Defendants' conduct constitutes reckless disregard of the probability of causing emotional distress to Plaintiffs.

121. Defendants were informed numerous times by neighbors that Plaintiffs are elderly and frail.

122. Defendants were also on notice that Plaintiffs were not in danger and were unharmed.

123. Despite this information, Defendants proceeded to demonstrate an unwarranted and excessive show of law enforcement force against Plaintiffs.

124. As a direct result, Plaintiff BERJ YENOVKIAN suffered a medical emergency while officers were preventing him from leaving his home.

125. Further, as a direct result, Plaintiffs suffered extreme emotional distress inflicted by Defendants conduct including, but not limited to persistent fear for personal safety, psychological trauma, social isolation, and related conditions.

126. Plaintiffs have been forced to pay for medical treatment and will continue to need further medical treatment for the foreseeable future.

**EIGHTH CAUSE OF ACTION**
**Elder Abuse**
**Against all Defendants**

127. Plaintiffs re-allege as though set forth herein the allegations of paragraph 1 – 84 above.

128. Nevada Revised Statute 41.1395 sets forth that Defendants who engage in elder abuse are liable for double actual damages suffered by the elderly person.

129. Here, Plaintiffs are both over age 60.

130. Plaintiffs suffered personal injury due to abuses of their Constitutional rights by Defendants. Namely, they have endured mental trauma, financial costs in having to relocate, and other damages as a result of LVMPD and its employees violating their Fourth Amendment rights.

131. Defendants had reason to know Plaintiffs were elderly because all of Plaintiffs neighborhoods informed Defendants of this fact.

132. Defendants acted with recklessness in pursuing a course of action that resulted in the trauma inflicted upon Plaintiffs, thus entitling Plaintiffs to an award of attorney fees and costs of the suit.

133. Plaintiffs, therefore, request relief as stated below.

## PRAYER FOR RELIEF

Plaintiffs pray that this Honorable Court find Defendants 'conduct constitutes violations of Plaintiffs 'constitutional rights under the Fourth and Fourteenth Amendments of the United States Constitution, statutory violations of 42 U.S.C. § 1983, intentional infliction of emotional distress, and Nevada Revised Statute 41.1395, all of which have caused Plaintiffs to suffer severe, continuing, and irreparable damages to their well-being, as well as financial loss.

WHEREFORE, Plaintiffs pray for the following relief:

A. That Defendants' actions be declared unlawful;

B. That Defendants' be ordered to pay Plaintiffs compensatory damages, according to proof, plus interest;

C. For general and special damages, including for elder abuse;

D. For punitive damages, as allowed by law, that will sufficiently punish, make an example of, and deter future conduct by Defendants;

E. For B, C, and D in an amount not less than $25,000,000.00;

F. For attorney's fees and costs in bringing this action;

G. For an award of pre-judgment and post-judgment interest; and

H. Any further relief as deemed appropriate by the Court.

DATED this 9th day of April 2025.

/s/ Aniela K Szymanski
Aniela K. Szymanski, Esq.
3765 E. Sunset Rd. B9
Las Vegas NV 89120
702-899-8180
Attorney for Plaintiffs